### In re MAXON ENGINEERING SERVICES, INC., Debtor.

**United Surety & Indemnity Company, Movant,**

v.

**Maxon Engineering Services, Inc., Respondent.**

No. 04–04781 (MWV).

United States Bankruptcy Court, D. Puerto Rico.

March 10, 2005.

---

Hector Saldaña Egozcue, Carlos Lugo–Fiol, Saldaña, Saldaña–Egozcue & Vallecillo, CSP, for Movant.

Carmen C. Conde, C. Conde & Assoc., for Debtor.

Isabel M. Fullana, Carcia–Arregui & Fullana, for Party in Interest PREPA.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it a motion for relief from the automatic stay filed by creditor United Surety & Indemnity Company (the "Movant") in order to cancel certain bonding contracts entered into between the Movant and Maxon Engineering Services, Inc. (the "Debtor"). The Debtor

opposed the Movant's request on July 27, 2004, and a party in interest, Puerto Rico Electric Power Authority ("PREPA") also objected to the Movant's motion on July 29, 2004. On August 26, 2004, a hearing was held on the motion, and the Court took the matter under advisement. For the reasons set out below, the Movant's motion for relief is denied.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

The Debtor owns and operates a business dedicated to construction projects in general and the sale of electrical energy power plants and related accessories in particular. PREPA is a public corporation that produces, transmits, and distributes all the electric power used in Puerto Rico. The Debtor provides construction and repair services to PREPA and some municipalities, among others. On May 24, 2004, the Debtor filed a bankruptcy petition under Chapter 11 in this Court.

The Movant is a surety company, and it issued multiple payment and performance bonds for construction projects which had been awarded to the Debtor prior to the commencement of the Debtor's bankruptcy proceedings. The Movant's motion concerns the bonds for twenty-nine projects which appear to be outstanding pursuant to the Movant's records. PREPA owns twenty-two projects out of the twenty-nine listed in the motion.

Pursuant to the payment bond agreement entered into between the Movant and the Debtor, the Movant and the Debt-or are jointly bound unto the project owners, including PREPA, for the payment, up to the penal sum which matches the contract price, to all persons supplying labor, equipment, tools and materials in the prosecution of the construction work. The Movant and the Debtor are also jointly responsible to perform and fulfill all the undertakings, covenants, terms and conditions of the construction contract, up to the penal sum, pursuant to the performance bond agreement. Thus, under both the payment and performance bond agreements (hereinafter "surety bonds"), the Movant has to pay and/or perform the obligations of the Debtor on the construction projects if the Debtor cannot pay and/or perform the projects. The Movant and the Debtor also executed an agreement of indemnity, which provides for assignment of the Debtor's property rights to the Movant, in the event of the Debtor's default in the bonded contract.

The Movant seeks an order lifting the automatic stay to permit the cancellation of the surety bonds because it believes that the Debtor does not have the ability to perform and pay the obligations under the construction projects. PREPA has not declared the Debtor in default on any of the construction contracts, but it has expressed its concern that the Debtor has not been performing the projects according to the terms of the construction contracts.

The gravamen of the Movant's argument is that the surety bonds are "financial accommodations" within the meaning of § 365(c)(2) of Bankruptcy Code.[1] Therefore, the bonds cannot be assumed by the Debtor and can be terminated by the Movant. On the other hand, the Debtor contends that the surety bonds are accommodations that have already been given, so

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

they are not contracts to extend financial accommodations in the future under § 365(c)(2). PREPA takes the position that the surety bonds are not executory contracts under § 365, thus the surety bonds cannot be assumed or rejected.

### DISCUSSION

■ The Court will first address the issue of whether the Movant's surety bonds are executory contracts within the purview of § 365, which a trustee (debtor in possession) may assume or reject subject to the bankruptcy court's approval. The Bankruptcy Code provides no definition of an executory contract, and the legislative history of § 365(a) indicates that Congress intended the term to mean a contract "on which performance is due to some extent on both sides," but provided no guidance concerning how substantial that performance had to be. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 n. 6, 104 S.Ct. 1188, 79 L.Ed.2d 482 (citations omitted). Consequently, the federal courts have pretty generally settled upon the so-called "Countryman definition," according to which a contract is executory if the obligations of both the debtor and the other party to the contract are so far under-performed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other. *See Gallivan v. Springfield Post Road Corp.*, 110 F.3d 848, 851 (1st Cir.1997) (citing *In re Columbia Gas System Inc.*, 50 F.3d 233, 239 (3d Cir.1995)). By invoking the "material breach" test, Countryman's definition serves to limit the number of contracts that will be found to be executory, since there are usually under-performed obligations on both sides in many contracts. *Butler v. Resident Care Innovation Corp. (In re Quechee Lakes Corp.)*, 241 B.R. 37, 42 (D.R.I.1999); *Stevens v. CSA, Inc. (In re CSA, Inc.)*, 271 B.R. 410, 413 (D.Mass. 2001).

■ Applying Countryman's definition to the present case, the Court finds that the surety bonds are not executory contracts. First, this is not a continuing transaction and there is no substantial performance left on both sides. All premiums for the surety bonds were paid by the project owners prepetition, and the construction projects commenced before the Debtor's bankruptcy petition was filed. Second, and more importantly, failure to perform by the Debtor does not create a material breach that excuses the Movant from performance. Instead, failure of the Debtor triggers the obligations of the Movant under the surety bonds, *i.e.* to pay and/or perform the obligations of the Debtor up to the contract price on the construction projects. Thus, the surety bonds fail to meet the Countryman's definition of executory contract.

Having found that the surety bonds are not executory contracts, it follows that they do not constitute "financial accommodations" either. Under § 365(c)(2), the trustee may not assume an executory contract "to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." Such contract is also excepted from the general rule, set out in § 365(e)(1), that prohibits cancellation or termination of contracts because of insolvency or the filing of bankruptcy. *See* § 365(e)(2); *In re Thomas B. Hamilton Co.*, 969 F.2d 1013, 1018 (11th Cir.1992); *In re Wegner Farms Co.*, 49 B.R. 440, 444 (Bankr.N.D.Iowa.1985). Since the financial accommodation described in § 365 is a kind of executory contract, if a contract is not executory, it follows that the contract is not a financial accommodation.

■ Even assuming, *arguendo*, that the surety bonds are financial accommodations as the Movant argues, that does not

give the Movant a right to terminate the surety bonds under § 365(e)(2). Section 365(e) expressly invalidates *ipso facto* clause [2] that might otherwise prevent the estate from receiving the benefit of an executory contract or unexpired lease. A contractual provision providing for the termination or modification of an executory contract conditioned on the debtor's insolvency or financial condition, the commencement of a bankruptcy case or the appointment of a receiver or custodian is not enforceable in a bankruptcy case.[3] 11 U.S.C. § 365(e)(1). This invalidation of *ipso facto* clauses does not apply to the financial accommodations.[4] 11 U.S.C. § 365(e)(2).

The Movant argues that the termination of the surety bonds as financial accommodations is allowed under § 365(e)(2). The Court does not agree. Section 365(e) only applies to termination or modification rights triggered by contract provisions which provide for the conditions described in § 365(e)(1)(A), (B) or (C). Neither the performance bond nor the payment bond provides such rights. Without *ipso facto* or optional bankruptcy termination clauses, § 365(e) is not applicable. Moreover, the Court notes that the performance bond includes a provision which provides that the obligation under the bond remains in full force and virtue until the Debtor truly performs and fulfills all the undertakings.[5] The payment bond has a similar provision.[6]

2. An *ipso facto* default clause is a contractual provision which operates automatically upon the bankruptcy or insolvency of a contract party. *Bruder v. Peaches Records & Tapes, Inc. (In re Peaches Records & Tapes, Inc.),* 51 B.R. 583, 587 n. 6 (9th Cir. BAP 1985).

3. Section 365(e)(1) reads:

Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
(A) the insolvency or financial condition of the debtor at any time before the closing of the case;
(B) the commencement of a case under this title; or
(C) the appointment of or taking possession by a trustee in a case under this title or custodian before such commencement.

4. Section 365(e)(2)(B) reads:

(2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(B) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

5. NOW, THEREFORE, if the Principal shall well and truly perform and fulfill all the undertakings, covenants, terms conditions, and agreement of said contract during the original term of said contract and any extension thereof that may be granted by the PUERTO RICO ELECTRIC POWER AUTHORITY, with or without notice to the Surety, and during the life of any guaranty required under said contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the Surety being hereby waived, then, this obligation to be void; otherwise to remain full force and virtue. (Ct. Doc. 139A Ex.)

6. NOW, THEREFORE, if the principal shall promptly make payment to all persons supplying labor, equipment, tools and materials in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue. (Ct. Doc. 139A Ex.)

Thus, under the provisions, it is clear that the only way to terminate the surety bonds is to complete all the obligations under the surety bonds. Unlike most contracts, default by the Debtor under the surety bonds does not give the Movant the right to terminate the bonds but instead triggers the Movant's obligation to pay or perform. The risky nature of the construction industry creates the need for some guaranty that the construction job will be completed and paid for. T. Scott Leo, *The Construction Contract Surety and Some Suretyship Defenses*, 34 Wm. & Mary L.Rev. 1225, 1228 (1993). If the surety bonds could be terminated upon the principal's bankruptcy filing, that defeats the purpose of the surety bond. Since the Movant is not permitted to terminate the surety bonds under § 365(e)(2), the Movant's motion for relief for the purpose of terminating the surety bonds is denied.

### CONCLUSION

For the reasons stated above, the Movant's motion for relief from the automatic stay is denied. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.